RANSOM, GILBERTSON, MARTIN &
RATLIFF, LLP
Jeffrey S. Ratliff
5441 S Macadam Ave, Suite 301
Portland, OR 97239
T: 503-226-3664

*[Proposed] Liaison Counsel for Lead Plaintiff and Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| SCOTT SIGMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NUSCALE POWER CORPORATION, JOHN L. HOPKINS, CHRIS COLBERT, ROBERT R. HAMADY, and CLAYTON SCOTT,<br><br>Defendants. | CASE No.: 3:23-cv-01689-IM<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW OF LAWRENCE LO IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTION<br><br>ORAL ARGUMENT REQUESTED |
| JÉRÔME RYCKEWAERT, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NUSCALE POWER CORPORATION, JOHN L. HOPKINS, CHRIS COLBERT, ROBERT R. HAMADY, and CLAYTON SCOTT,<br><br>Defendants. | CASE No.: 3:23-cv-01956-IM |

Lead Plaintiff Movant Lawrence Lo ("Lo" or "Movant") respectfully submits this opposition to the remaining competing lead plaintiff motion. Dkt. No. 16. [1]

## BACKGROUND

Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") courts are to appoint as lead plaintiff the person with "the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 268-69 (3d Cir. 2001); 15 U.S.C. §78u-4(a)(3)(B).

Lo has triggered the PSLRA's "most adequate plaintiff" presumption. First, Lo has the largest financial interest in this litigation as he has a larger loss than the remaining competing movant. *See* Dkt. Nos. 14-3, 17.

| Movant | Loss |
|---|---|
| 1. Lawrence Lo | $68,250.00 |
| 2. Dr. Kevin Liang Li ("Dr. Li"), individually and on behalf of 1191323 B.C. LTD | $56,503.89 (LIFO) |

Second, as set forth in Lo's opening papers, he has made a *prima facie* showing of adequacy and typicality under Rule 23. *See* Dkt. No. 12, at 8-9.

Finally, the presumption that Lo is the "most adequate plaintiff" — i.e. the presumptive lead plaintiff — "may be rebutted only upon proof." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Because the remaining competing movant can offer no proof to rebut the presumption in favor of Lo, the Court should grant Movant's motion in its entirety and deny the competing lead plaintiff motion.

---

[1] On January 30, 2024, the Latchman-Notter Group, Chase-Basile Group, and NuScale Investor Group (defined below) filed notices of non-opposition to competing lead plaintiff motions on the basis of not having the largest financial interest. *See* Dkt. No. 24, 25, and 26. In addition, Rick Klettke filed a notice of withdrawal. Dkt. No. 27.

## ARGUMENT

### I. LO SHOULD BE APPOINTED LEAD PLAINTIFF

The Ninth Circuit has explained that the PSLRA provides a "clear path that the district court must follow in selecting the lead plaintiff." *Cavanaugh*, 306 F.3d at 729. After determining that notice of the action is appropriate and timely, the district court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.*, at 730 (emphasis in original). Importantly, "a straightforward application of the statutory scheme ... provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case." *Id.*, at 732. "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id.*

Utilizing this simple process confirms that Lo is the presumptive Lead Plaintiff and the Court should grant Lo's motion. Lo has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Lo has the largest losses of any movants before the Court. *See* Dkt. Nos. 12-3, 17, 19-2, 20, *Ryckewaert v. NuScale Power Corporation, et al.*, 3:23-cv-01956-IM, Dkt. No. 5-1. Therefore, Lo has the largest financial interest. *See Id.*

Once the court "determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements." *Cavanaugh*, 306 F.3d at 730, 732 ("If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff."); *Cendant*, 264 F.3d at 263 ("The initial inquiry (i.e., the

determination of whether the movant with the largest interest in the case 'otherwise satisfies' Rule 23) should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy.'").

Like all purported class members, Lo alleges that Defendants violated the Securities Exchange Act of 1934 ("Exchange Act") by publicly disseminating false and misleading statements about NuScale Power Corporation's ("NuScale" or the "Company") business. Lo purchased NuScale securities at artificially inflated prices and was damaged thereby. These claims are also premised on the same legal and remedial theories and are based on the same types of misstatements and omissions as the class's claims. Thus, Movant satisfies the typicality requirement. *See generally Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1137 (C.D. Cal. 1999). Lo has demonstrated his adequacy as class representative by submitting a sworn certification affirming his willingness to serve as, and carry out the responsibilities of, class representative. Dkt. No. 12-2. Based on his financial interest in the litigation and satisfaction of the Rule 23 requirements at this stage, Lo has triggered the PSLRA's most adequate plaintiff presumption. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

Importantly, "once the statutory presumption has attached, it cannot be rebutted through relative comparison." *Ferrari v. Gisch*, 225 F.R.D. 599, 610 (C.D. Cal. 2004); *Cavanaugh*, 306 F.3d at 732 (explaining that courts are not to "engage[] in a freewheeling comparison of the parties competing for lead plaintiff").

Indeed, that "the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient. Rather, the statute provides that the presumption 'may be rebutted only upon proof ... that the presumptively most adequate plaintiff' does not satisfy the adequacy or typicality requirements of Rule 23." *Cavanaugh*, 306 F.3d at 729 n.2 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

## II. LO'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to approval by the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cavanaugh*, 306 F.3d at 734 ("While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of lead plaintiff.").

Here, Lo has selected The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. Rosen Law has the resources and expertise to litigate this action efficiently and aggressively. As the firm's resume reflects, it is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. Dkt. No. 12-4. Indeed, Rosen Law is one of the preeminent securities class action law firms in the country. Rosen Law has served as sole and co-lead counsel in numerous cases around the country and has recovered hundreds of millions of dollars for investors. *Id.*

Thus, the Court may be assured that by approving Movant's selection of counsel, the members of the class will receive excellent legal representation.

## III. THE COMPETING MOTION SHOULD BE DENIED

The one remaining competing motion should be denied as Lo has the greatest financial interest in the litigation, satisfies the requirements of Rule 23, and should therefore be appointed Lead Plaintiff without further analyses. *Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

In no way is Lo conceding or acknowledging that the one remaining competing movant is adequate or that his claims are typical. There are facts which bear noting about the competing movant. [2]

## A. DR. LI'S POST-FRAUD PURCHASE RENDERS HIM INADEQUATE AND ATYPICAL

Courts refuse to appoint lead plaintiffs that made significant purchases after the disclosure of fraud, including partial corrective disclosures. *See In re Snap Inc. Sec. Litig.*, 2019 WL 2223800, at \*2 (C.D. Cal. Apr. 1, 2019). In *Snap*, the court rejected a lead plaintiff movant that purchased a majority of this shares after the first (of three) partial corrective disclosures. The court explained that such post-disclosure purchases "could undermine his ability to assert the fraud-on-the-market presumption of reliance. Without the presumption of reliance, proof of

---

[2] Although Bradon Notter, Adrian Latchman, and Gillian Lynch-Latchman (the "Latchman-Notter Group), Thomas Basile and Samantha Carmen Chase (the "Chase-Basile Group"), and David Bader and William Whitton (the "NuScale Investor Group") filed notices of non-opposition (Dkt. Nos. 24, 25, and 26), it must be noted that each of these group movants are impermissible groups of unrelated individuals brought together by counsel solely for the purpose of creating the largest financial interest. *See, e.g.*, "[p]laintiffs . . . aggregation of their claims in an attempt to show that they have the largest financial interest in this litigation is not convincing in light of the purposes of the PSLRA. A loose group of investors whose relationship was forged only in an attempt to win appointment as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject to all the obstacles that normally make group action difficult. Even though the . . . [g]roup consists of only three individuals, their decision making required either (a) levels of coordination, negotiation, and collective action which far exceed that which would be necessary of an individual litigant or (b) undue control by their lawyer-representatives." *Frias v. Dendreon Corp.*, 835 F.Supp.2d 1067, 1074 (W.D. Wash. 2011) (quoting *Crawford v. Onyx Software Corp.*, No. C01-1346L, 2002 WL 356760 (W.D. Wash. Jan. 10, 2002), at \*2 and concluding that the losses of an investor group comprised in part of unrelated individuals should be considered individually and not aggregated). Further, "[t]lthough the PSLRA allows groups to serve as lead plaintiffs, 'courts have uniformly refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'"). *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at \*3 (D. Ariz Apr. 7, 2008) (quoting *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002)). "For the most part, to 'allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *Id.* (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)).

individualized reliance from each member of the putative class would be required-which would effectively preclude class certification." *Id. See In Re Snap Inc. Securities Litigation*, 2:17-cv-03679, Dkt. No. 25-1 at 3-4 (outlining three separate disclosures on May 10, 2017, May 16, 2017, and June 7, 2017), and 25-4 (showing the movant's buy orders (totaling 150,000 shares) between May 12 and May 16, 2017, after the first disclosure on May 10, 2017.

*See also Kanefsky v. Honeywell Int'l Inc.*, No. 18-cv-15536, 2020 WL 2520669 at *3 n.4 (D.N.J. May 18, 2020) ("Plaintiff . . . purchased shares on September 11, 2018, *after* the first corrective disclosure. Thus, the Court foresees problems arising at the class certification stage.") (emphasis in original) (internal citations omitted).

Here, the truth began to emerge on October 19, 2023, when Iceberg Research published a report titled "NuScale Power (SSMR): A Fake Customer and a Major Contract in Peril Cast Doubt on NuScale's Viability." (the "Report") Dkt. 1, at 11. The Report concluded that NuScale's contracts with Utah Associated Municipal Power Systems ("UAMPS") (as part of its Carbon Free Power Project ("CFFP")) and Standard Power were unlikely to result in any revenue for the Company. *Id.* at 11-12. The respective reasons for this were that no new CFPP customers had signed up since March 2023, and that Standard Power didn't have the "means to support contracts of this size." *Id.* at 12. The Report highlighted unsavory details regarding Standard Power's CEO, Maxim Serezhin, who the Report noted had an outstanding $54,000 tax warrant in New York. *Id.* The Report noted that Standard Power's former managing director, Adam Swickle, had been "subject to SEC scrutiny in 2003 for "setting up a fake foreign exchange trading house and making off with investors' cash,' resulting in over $700,000 in monetary penalties." *Id.* at 12-13.

Dr. Li, through 1191323 B.C. LTD., a holding company that Dr. Li and his wife co-own and manage, purchased 66,056 warrants, or 48.91% of his total purchased sum of 135,056

warrants (across his personal account and the 1191323 B.C. LTD. account), on October 20, 2023, *after* the Report was published on October 19, 2023. Dkt. No. 17, Exhibit A, at 2. This proportion goes up further after Dr. Li's sell orders are taken into account. At the end of the class period, Dr. Li held 53,045 NuScale warrants in his personal account. Dkt. No. 17, Exhibit B. As a result, the purchase of 66,056 in the 1191323 B.C. LTD. account after the Report's release was over 55% of his total position (across both accounts) in NuScale warrants at the end of the class period. *See Id.*[3]

In short, Dr. Li's post-fraud purchase renders him inadequate and atypical.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff of the Class; (3) approving Movant's selection of Rosen as Lead Counsel and RGMR as Liaison counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: January 30, 2024                          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

---

[3] Latchman and Lynch-Latchman and both members of the Chase-Basile Group are also inadequate on this same basis. Latchman and Lynch-Latchman purchased 6,850 (or 68.5% of their total position in NuScale stock) across two trades on October 24, 2023 and November 1, 2023, after the Report's release. Dkt. No. 19-1. In addition, Basile purchased 6,500 warrants on October 20, 2023, after the Report's release, which was 18.8% of his total position. *See Ryckewaert v. NuScale Power Corporation et al.*, 3:23-cv-01945-IM, Dkt. No 5-3. Chase bought 300 shares of NuScale stock on November 8, 2023, or 5% of her total position, after the Report's release. *Id.*

*[Proposed] Lead Counsel for Lead Plaintiff*

*and Class*

RANSOM, GILBERTSON, MARTIN &
RATLIFF, LLP
/s/
Jeffrey S. Ratliff
5441 S Macadam Ave, Suite 301
Portland, OR 97239
T: 503-226-3664

*[Proposed] Liaison Counsel for Lead Plaintiff
And Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Phillip Kim