RANSOM, GILBERTSON, MARTIN &
RATLIFF, LLP
Jeffrey S. Ratliff
5441 S Macadam Ave, Suite 301
Portland, OR 97239
T: 503-226-3664

*[Proposed] Liaison Counsel for Lead Plaintiff and Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| SCOTT SIGMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br>NUSCALE POWER CORPORATION, JOHN L. HOPKINS, CHRIS COLBERT, ROBERT R. HAMADY, and CLAYTON SCOTT,<br><br>Defendants. | CASE No.: 3:23-cv-01689-IM (Lead Case)<br><br>Case No.: 3:23-cv-01956-IM (Trailing Case)<br><br>**CLASS ACTION**<br><br>**REPLY MEMORANDUM OF LAW OF LAWRENCE LO IN FURTHER SUPPORT OF HIS LEAD PLAINTIFF MOTION**<br><br>**ORAL ARGUMENT REQUESTED** |

Lead Plaintiff Movant Lawrence Lo ("Lo") submits this reply in further opposition to movant Dr. Kevin Liang Li ("Dr. Li"). Lo is the presumptive Lead Plaintiff as he has the largest losses ($68,250) and has made a *prima facie* showing of his adequacy and typicality. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Lo lives in Hong Kong, has a double bachelor's degree, and is a full-time investor. Dkt. No. 12, at 9. As Dr. Li has failed to submit the requisite *proof* to rebut the presumption favoring Lo, the Court should appoint him Lead Plaintiff and approve his selection of counsel. "The PSLRA requires 'proof' to overcome the presumption entitling the plaintiff with the largest financial interest [to appointment as lead plaintiff]; speculative assertions are insufficient." *Doherty v. Pivotal Software, Inc.*, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) (citations omitted). In Opposition, Dr. Li advances three meritless arguments: (A) Lo doesn't have the largest financial interest; (B) Lo, a Hong Kong resident, may be subject to travel restrictions; and (C) Lo is atypical and subject to unique defenses. *See* Opp. at 4-5, 7-9.

### A. LO HAS THE LARGEST FINANCIAL INTEREST

Dr. Li argues that while he has smaller losses, he has the largest financial interest because he has larger amounts for the other three *Olsten-Lax* factors: (1) shares purchased; (2) net shares purchased; and (3) net funds expended. He is wrong. Courts in this Circuit hold that the fourth factor—approximate loss—is most determinative in assessing financial interest. *See In re Cheetah Mobile, Inc. Securities Litigation*, 2021 WL 99635 at *3-4 (C.D. Cal. Jan. 12, 2021) (holding that loss is the most important factor, appointing movant with largest loss irrespective of other factors); *Knox v. Yingli Green Energy Holding Company Limited*, 136 F.Supp.3d 1159, 1165 (same); *Richardson v. TVIA Inc.* 2007 WL 1129344 at *3-4, 6 (N.D. Cal. Apr. 16, 2007) (same); *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005) (N.D. Ill. Mar. 15, 2005) ("The best yardstick by which to judge 'largest financial interest' is the amount of loss, period.").[1] *In re Wrap Technologies*, 2021 WL 71433 at *2-3 (C.D. Cal. Jan. 7,

2021) is on point. The court rejected a movant who led on the first three *Olsten-Lax* factors and appointed a movant with the largest loss, holding that "[i]n this circuit, no case law requires the Court to give equal weight to the first three [factors]. While some courts have weighed the factors equally, "[c]ourts in the Ninth Circuit have tended to give the final factor the most emphasis[.]" Further, "[i]n accordance with the weight of authority, the Court finds that the approximate losses suffered is the most important consideration." *Id.*

Dr. Li's reliance on *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) is misplaced, as that court used a net shares methodology where "[t]he test simply reduces to the net number of shares bought and sold during the class period", to deduce which movant had the greatest loss. *See Id.* This method was not advanced in Dr. Li's opening papers. *See* Dkt. No. 16, at 8. Here's why. The net shares methodology is not useful if, as here, there is more than one corrective disclosure. *See Nicolow v. Hewlett Packard Co.*, 2013 WL 792642 at *4 (N.D. Cal. Mar. 4, 2013) (net shares less useful when there are multiple corrective disclosures); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, 2006 WL 197036, at *4 (S.D.N.Y. Jan. 25, 2006) ("the fact that [movant] has [prevailed on] the second *Lax* factor (net shares purchased) diminishes in importance [when, as here], partial corrective disclosures were [periodically reaching investors.] Thus, [though] the [Trust's] shares were sold before the class period ended, one [wouldn't necessarily have to conclude that its] losses are unattributable to the alleged fraudulent inflation.").

Dr. Li argues that the difference between his and Lo's loss "is just $11,746.11" and cites noncontrolling law to argue the first three *Olsten-Lax* factors should be granted greater weight and overcome the fourth factor, as the difference "in alleged losses is relatively small."[2] None of

---

[1] Dr. Li's counsel routinely takes the same position. *E.g. Olsson v. PLDT Inc., et al*, 2:23-cv-00885-CJC-MAA, 2023 WL 3139912 at *2 (C.D. Cal. Apr. 26, 2023), Dkt. No. 14, at 2-3; *Wilhite v. Expensify, Inc. et al*, 3:23-cv-01784-JR (D. Or. 2023), Dkt. No. 18, at 3-4.

his cases apply. In *TransDigm*, 2017 WL 6028213 at *2 (N.D. Ohio Dec. 5, 2017) the court appointed the movant with the second largest loss by doing a comparative analysis of adequacy. *See Id.* at *3. Such analysis is contrary to Ninth Circuit law. *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).[3]

### B.   LO IS TYPICAL AND ADEQUATE.

**Lo's Hong Kong Residency:** Dr. Li speculates that Lo "may or may not be subject to a number of travel restrictions (presently and in the future)." *See* Opp. at 7. Dr. Li presents *no proof* of any current or contemplated restrictions. This falls short of the requisite proof. *See Marquez v. Bright Health Group, Inc.*, 2022 WL 1314812 at *9 (E.D.N.Y. Apr. 26, 2022) (rejecting the same arguments and appointing Hong Kong movant as lead plaintiff).[4] Dr. Li's speculation that there may be language barriers—is false. Lo is fluent in English.[5]

**Lo's Trading Pattern Does not Make him Atypical or Inadequate:** Dr. Li claims that Lo is subject to a unique defense because he purchased shares "only 10 days before the first corrective disclosure, and then sold all of his shares after the first corrective disclosure[.]" Opp., at 8. This argument is nonsense. Dr. Li cites no cases holding that a movant is subject to a unique

---

[2] In *Wilhite v. Expensify, Inc.*, 3:23-cv-01784-JR (2023) (D. Or.), Dkt. No 18, at 4, Dr. Li's counsel recently argued their client had "over $8,000 more in losses as compared to [. . .] the movant with the second largest financial interest" and thus has the largest financial interest.
[3] Dr. Li's other cases fare no better. In *Sunopta* the movant was "comprised of two institutional investors, each with significant losses" and the other was "individual investors who have combined only for purposes of this litigation." *Juliar v. Sunopta Inc.*, 2009 WL 1955237 at *2 (S.D.N.Y. Jan. 30, 2009). In *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007) the movant with the larger loss, "claimed losses [that] may be uncollectible." *Id.* at 2. In *Doral*, it was unclear who had the greatest loss due to competing methodologies and five different class periods. *In re Doral Financial Corp. Securities* Litigation, 414 F.Supp.2d 398, 403 (S.D.N.Y. 2006).
[4] Dr. Li's counsel regularly files lead plaintiff motions with overseas movants. *Tan v. NIO Inc.*, 2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020), Dkt. No. 32, 33-3 (Hong Kong); *Burns v. Up Fintech Holding Limited et al*, 2:23-cv-04842, 2024 WL 387261 (C.D. Cal. 2023), Dkt. No. 23, 23-6 (Singapore).
[5] Hong Kong has two official languages, English and Chinese. https://en.wikipedia.org/wiki/Hong_Kong.

4

defense on this basis. Rule 23's adequacy and typicality requirements do not require a lead plaintiff to have standing to recover on each stock price decline. *See Tsirekidze v. Syntax-Brillian Corp.*, 2009 WL 2151838, at * 2 (D. Ariz. July 17, 2009) ("[N]othing in the PSLRA indicates that [courts] must choose a lead plaintiff with standing to sue on every available cause of action.") (quoting *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2008)).

It is only required that a lead plaintiff "suffer[s] a concrete injury because of defendants' wrongdoing, not *every* injury alleged by the class." *In re Leapfrog Enterprises, Inc. Sec. Litig.*, 2005 WL 3801587, at * 3 (N.D. Cal. Nov. 23, 2005) (citation omitted); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same [conduct].") (quotation and citation omitted). Indeed, "differences in [damages], the size or manner of [stock] purchases, the nature of the purchaser, and even the [document] influencing the purchase will not render a claim atypical in most securities cases." *Tsirekidze*, 2009 WL 215838, at * 4 (citation and quotation omitted). Lo's claims are typical even if he didn't hold through the second disclosure because he suffered a similar injury, based on the same fraud, as absent class members. Lo held his shares through October 19, 2023, when the Iceberg Research report (the "Report") revealed fraud in NuScale's business. In part, the Report questioned if one of NuScale's contracts was viable, due to a lack of new subscribers. Dkt. No. 1, at 12. This disclosure caused NuScale's shares to drop by 12% on October 19, 2023, and 14.9% on October 20, 2023. *Id.*, at 13. The second disclosure was a press release which announced that the same contract had been terminated because "it appears unlikely that the project will have enough subscription to continue", confirming the Report's allegations. Dkt. No. 1, at 13. The second disclosure stems from the same fraud the Report revealed. Lo's interests are aligned with

investors who held through the second disclosure, who must, like Lo, prove the same fraud detailed in the Report. That Lo can't personally seek recovery for the second disclosure doesn't render him atypical or inadequate.

Said differently, Lo and those who held through the second disclosure must both prove the fraud set forth in the Report to recover, and so have the same incentive. *See Tsirekidze*, 2009 WL 2151838, at * 4 (rejecting argument plaintiff is atypical because he sold before a disclosure since claims arise from same legal theories and facts as class, and dismissing argument he lacked incentive to pursue claims for those who held longer); *see also Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (representative's claims must be similar but need not be identical to absent class members; and the injuries must result from the same conduct.).[6]

## CONCLUSION

For the foregoing reasons, including in Lo's opening and opposition papers, Lo's motion should be granted in its entirety and the one remaining competing motion should be denied.

Dated: February 14, 2023          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

---

[6] Dr. Li cites *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240-241 (E.D.N.Y. 2011) and *In re Veeco Instruments, Inc. Sec. Litig.*, 233 F.R.D. 330, 333-34 (S.D.N.Y. 2006), which do not apply because those movants sold all of their shares *before any* corrective disclosure. Here, it is admitted that Lo sold his shares after a corrective disclosure.

RANSOM, GILBERTSON, MARTIN &
RATLIFF, LLP
/s/
Jeffrey S. Ratliff
5441 S Macadam Ave, Suite 301
Portland, OR 97239
T: 503-226-3664

*[Proposed] Liaison Counsel for Lead Plaintiff
And Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Phillip Kim