IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SCOTT SIGMAN, and NUSCALE
INVESTMENT GROUP,

Plaintiffs,

v.

NUSCALE POWER CORPORATION,
JOHN L. HOPKINS, CHRIS COLBERT,
ROBERT R. HAMADY, CLAYTON
SCOTT, THOMAS BASILE, and
CARMEN CHASE,

Defendants.

Case No. 3:23-cv-01689-IM (Lead Case)
3:23-cv-01956-IM (Trailing Case)

OPINION AND ORDER APPOINTING
CLASS ACTION LEAD PLAINTIFF

**IMMERGUT, District Judge.**

Before this Court are dueling motions to appoint a lead plaintiff in this class action

securities litigation. *See* Motion of Kevin Liang Li, ECF 16 ("Li Mot."); Motion of Lawrence

Lo, ECF 12 ("Lo Mot."). This case concerns claims of securities fraud against Defendants for

their alleged misrepresentations and omissions concerning Defendant NuScale Power

Corporation's ability to fulfill two large contracts. *See* Complaint, ECF 1 ¶¶ 1–8. As alleged in

PAGE 1 – OPINION AND ORDER APPOINTING CLASS ACTION LEAD PLAINTIFF

the Complaint, two corrective disclosures led to large falls in the stock price: first, an Iceberg Research report published on October 19, 2023, and second, a NuScale press release on November 8, 2023. *Id.* ¶¶ 34–41. The class period is March 15 to November 8, 2023. *Id.* ¶ 1.

Earlier in this action, this Court consolidated the two above-numbered actions because they raised identical securities frauds claims against the same defendants. *See* ECF 30. Although six parties filed motions for appointment as lead counsel, four of these parties then filed notices withdrawing, or effectively withdrawing, their motions. *See* ECF 24, 25, 26, 27. Only Plaintiffs Dr. Kevin Liang Li and Mr. Lawrence Lo, who filed responses in opposition to one another's motions, remain as lead plaintiff candidates. *See* Kevin Liang Li's Response ("Li Resp."), ECF 28; Lawrence Lo's Response ("Lo Resp."), ECF 29. This Court ordered Dr. Li and Mr. Lo to file reply briefs in support of their initial motions, which they timely did. ECF 30; *see* Kevin Liang Li's Reply ("Li Reply"), ECF 32; Lawrence Lo's Reply ("Lo Reply"), ECF 31.

After considering Dr. Li's and Mr. Lo's filings, and in accord with the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, this Court appoints Mr. Lo as lead plaintiff to this litigation. Further, consistent with Mr. Lo's selection of counsel, this Court appoints The Rosen Law Firm, P.A. as lead counsel and Ransom, Gilbertson, Martin & Ratliff, LLP as local liaison counsel. This Court accordingly DENIES Dr. Li's Motion to Appoint Lead Counsel, ECF 16, and GRANTS Mr. Lo's Motion to Appoint Lead Counsel, ECF 12.

## BACKGROUND

The following facts are primarily drawn from the Complaint, ECF 1. Defendant NuScale is a nuclear power company that develops small modular reactor technology. *Id.* ¶ 2. Defendants John L. Hopkins, Chris Colbert, Robert R. Hamady, and Clayton Scott are current or former executives of NuScale. *Id.* ¶¶ 15–18.

PAGE 2 – OPINION AND ORDER APPOINTING CLASS ACTION LEAD PLAINTIFF

At the heart of this case are two contracts NuScale entered into in 2015 and 2023. In 2015, it contracted with Utah Associated Municipal Power Systems ("UAMPS") to build a power plant by 2029. *Id.* ¶ 21. This contract was valued at over $9 billion. *Id.* It also included a subscription target. *See id.* ¶ 23. Then, in October 2023, NuScale contracted with Standard Power to build two power plants by 2029. *Id.* ¶ 24. This contract was valued at $37 billion. *Id.*

During the class period of March 15 to November 8, 2023, Defendants expressed optimism about NuScale's ability to fulfill these contracts. *See id.* ¶¶ 25–32. In Plaintiffs' view, however, "Defendants' positive statements about [NuScale's] business, operations, and prospects were materially misleading and/or lacked a reasonable basis." *Id.* ¶ 33. In particular, Plaintiffs say, Defendants misled investors regarding these two contracts because they failed to disclose that: (1) "due to the impact of inflationary pressures on the cost of construction and power, [NuScale] and UAMPS would be unable to sign up enough subscribers" to reach their contract's subscription target; and (2) "Standard Power did not have the financial ability to support its agreement with NuScale." *Id.*

On October 19, 2023, the first corrective disclosure in this action occurred: Iceberg Research released a report that identified these two issues and accordingly questioned whether NuScale could fulfill the two aforementioned contracts. *Id.* ¶ 3. As a result, on October 19, 2023, NuScale's share price fell $0.61 per share, or 12.0%, to close at $4.46 per share, on unusually high trading volume, and on October 20, 2023, the share price continued to fall another $0.67 per share, or 14.9%, to close at $3.80 per share, also on unusually high trading volume. *Id.* ¶¶ 4–5.

Next, on November 8, 2023, the second corrective disclosure occurred: after the market closed, NuScale and UAMPS announced that they had mutually agreed to terminate their contract because they had failed to engage enough subscribers. *Id.* ¶ 6. As a result, NuScale's

PAGE 3 – OPINION AND ORDER APPOINTING CLASS ACTION LEAD PLAINTIFF

share price fell $1.02 per share, or 32.9%, to close at $2.08 per share on November 9, 2023, again on unusually high trading volume. *Id.* ¶ 7.

The Complaint in the above-captioned leading case was filed on November 15, 2023. Complaint, ECF 1. It alleges that all Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b-5 and that the individual Defendants violated Section 20(a) of the Exchange Act. *Id.* ¶¶ 59–75. On the same day, a notice concerning this class action was published in the Globe Newswire. Declaration of Aurelia Erickson ("Erickson Decl."), ECF 17 ¶ 2; *id.*, Ex. C.

Consistent with the PSLRA, Federal District Judge Michael Mosman ordered that any motions for appointment of lead plaintiff and lead counsel be filed no later than January 16, 2024. ECF 11.[1] Although six parties filed motions for appointment as lead counsel, four of these parties then filed notices withdrawing, or effectively withdrawing, their motions. *See* ECF 24, 25, 26, 27. Only Plaintiffs Dr. Kevin Liang Li and Mr. Lawrence Lo, who filed responses in opposition to one another's motions, remain as lead plaintiff candidates. *See* Li Resp., ECF 28; Lo Resp., ECF 29. This Court ordered Dr. Li and Mr. Lo to file reply briefs in support of their initial motions, which they timely did. ECF 30; *see* Li Reply, ECF 32; Lo Reply, ECF 31.

Both Mr. Lo and Dr. Li have alleged substantial financial losses from the inflated price of NuScale shares. Mr. Lo bought 50,000 shares of NuScale on October 9, 2023 and then sold all 50,000 on October 20, 2023, the day after the first disclosure—resulting in losses of $68,250. *See*

---

[1] This case, the above-captioned leading case, was reassigned to this Court on January 19, 2024. ECF 22. The complaint in the trailing case, *Ryckewaert v. NuScale Power Corp.*— which is virtually identical to the complaint filed in the leading case—was filed on December 26, 2023, and trailing case was then assigned to this Court. After the leading case was also assigned to this Court, the leading and trailing cases were consolidated on January 19, 2024. ECF 30.

ECF 12-2; 12-3. During the class period, Dr. Li bought 135,056 shares, sold 15,955, and incurred losses of $56,503.89. *See* Ex. A, ECF 17 at 4–5; Ex. B, ECF 17 at 7.

## LEGAL STANDARDS

Pursuant to the PSLRA, the Ninth Circuit has established a three-step inquiry for determining the lead plaintiff and lead counsel in class action securities fraud actions. *See In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).

At step one, the first plaintiff to file an action under the PSLRA must post a notice "publicizing the pendency of the action, the claims made and the purported class period . . . 'in a widely circulated national business-oriented publication or wire service.'" *Id.* at 729 (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)).

At step two, "the district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the 'presumptively most adequate plaintiff'—and hence the presumptive lead plaintiff—the one who 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id.* at 729–30 (footnote omitted) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). In calculating the financial interest, the court has discretion to choose among "accounting methods" so long as the court's favored method is "both rational and consistently applied." *Id.* at 730 n.4.

Once the court has decided which plaintiff has the largest financial stake, the court then must "focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* at 730 (footnote omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A.B. v. Haw. State Dep't of Ed.*, 30 F.4th 828, 839

PAGE 5 – OPINION AND ORDER APPOINTING CLASS ACTION LEAD PLAINTIFF

(9th Cir. 2022) (citation and internal quotation marks omitted). "The adequacy inquiry is addressed by answering two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (citation and internal quotation marks omitted).

If the plaintiff with the largest financial stake cannot satisfy the Rule 23 criteria, then "the court must repeat the inquiry" with the "plaintiff with the next-largest financial stake," until the court finds a plaintiff both willing to serve as lead plaintiff and able to satisfy Rule 23's requirements. *Cavanaugh*, 306 F.3d at 730.

At step three, this court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfied Rule 23's typicality and adequacy requirements." *Id.* (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). To rebut that showing, the opposing plaintiff must show that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render [the presumptive lead] plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the rebuttal is successful, then the court must return to the beginning of step two and run through the steps outlined above for the plaintiff with next-largest financial stake "until all challenges have been exhausted." *Cavanaugh*, 306 F.3d at 731 (citation and footnote omitted).

Finally, under the PSLRA, the lead plaintiff is given the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[T]he district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Court*, 586 F.3d 703, 711 (9th Cir. 2009) (citation

omitted). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Id.* at 712 (citations omitted).

## DISCUSSION

Following this order of operations, this Court appoints Mr. Lo as lead plaintiff. Mr. Lo has the largest monetary loss between himself and Dr. Li. He has made a prima facie showing that satisfies Rule 23's adequacy and typicality requirements. And, in this Court's view, he is not subject to unique defenses that disqualify him as lead plaintiff. This Court also appoints Mr. Lo's choice of counsel to lead this litigation: The Rosen Law Firm as lead counsel and Ransom, Gilbertson, Martin & Ratliff as liaison counsel.

### A.  Appointing the Lead Plaintiff

#### 1.  Step One: The PSLRA's Procedural Requirements Have Been Met

The first step of the PSLRA sequence has doubtless been satisfied; on November 15, 2023, the original plaintiffs in the above-numbered, consolidated cases published notices in Globe Newswire informing the public of this class action litigation. Erickson Decl., ECF 17 ¶ 2; Ex. C, ECF 17 at 9–10. Both Mr. Lo and Dr. Li filed their motions for appointment as lead plaintiff by the January 16, 2024 deadline, and both have certified that they are willing to serve as lead plaintiff. *See* ECF 12-2; Ex. A, ECF 17 at 4. This Court can therefore proceed to the PSLRA's next two steps.

#### 2.  Step Two: Mr. Lo Is the Presumptive Lead Plaintiff

##### a.  Mr. Lo Has the Largest Financial Stake Because He Incurred the Largest Monetary Losses

Mr. Lo and Dr. Li contest what mode of calculation this Court should apply to determine which movant has the largest financial stake in this action under the PSLRA. The Ninth Circuit has not endorsed any single test. *Cavanaugh*, 306 F.3d at 730 n.4. Dr. Li urges this Court to

PAGE 7 – OPINION AND ORDER APPOINTING CLASS ACTION LEAD PLAINTIFF

focus primarily on the number of net share purchases during the class period. Li Resp., ECF 28 at 4. Mr. Lo, by contrast, contends that this Court must look exclusively at the approximate monetary losses suffered during the class period of March 15 to November 8, 2023. Lo Reply, ECF 31 at 2–3. This Court's choice of test will necessarily decide the identity of the presumptive lead plaintiff because, as no one disputes, Dr. Li made the largest number of net purchases during the class period (119,101 shares), and Mr. Lo suffered the largest monetary losses ($68,250). *See* Erickson Decl., ECF 17 ¶ 2; *id.*, Ex. A; *id.*, Ex. B; Declaration of Jeffrey S. Ratliff ("Ratliff Decl."); ECF 13 ¶ 2; ECF 12-2; ECF 12-3.

This Court adopts the monetary losses mode of calculation. For one, that has been the primary mode of calculation in the District of Oregon. *See, e.g.*, *Cannataro v. Portland Gen. Elec. Co.*, Case No. 3:20-cv-1583-SI, 2020 WL 12800744, at *5 n.5 (D. Or. Nov. 10, 2020) (observing that "[d]istrict courts have generally equated financial interest with actual economic losses suffered" (citing *Miami Police Relief & Pension Fund v. Fusion-io, Inc.*, Case No.: 13–CV–05368–LHK, 2014 WL 2604991, at *4 (N.D. Cal. June 10, 2014)); *Deering v. Galena Biopharma, Inc.*, No. 3:14–cv–00367–SI, 2014 WL 4954398, at *8 (D. Or. Oct. 3, 2014) (same). And the same is true in other districts in the Ninth Circuit. *See Nicolow v. Hewlett Packard Co.*, No. 12–05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) ("The weight of authority puts the most emphasis on the competing movants' estimated losses . . . ." (citations omitted)).

Further counseling against a net purchases approach is the fact that this case involves two separate disclosures that both altered NuScale's share price at varying rates. *See supra* at 3–4. "As many district courts have observed, net shares purchased and 'retained shares' calculation are less useful analytical tools where gradual disclosures are involved, because those methods

PAGE 8 – OPINION AND ORDER APPOINTING CLASS ACTION LEAD PLAINTIFF

assume a constant 'fraud premium' throughout the class period."[2] *Nicolow*, 2013 WL 792642, at

*4 & n.5 (citing cases); *see also In re Lyft Sec. Litig.*, Case No. 19-cv-02690-HSG, 2020 WL

1043628, at *4 (N.D. Cal. Mar. 4, 2020) (similar); *In re WatchGuard*, Master File No. C05-

678JLR, 2005 WL 8188936, at *2–3 (W.D. Wash. July 13, 2005) (similar). This is especially so

when, as was the case here, there were disparities in how the disclosures affected the relevant

stock price. *See Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*, Case

No. 22-cv-04893-HSG, 2023 WL 3613313, at *4 (N.D. Cal. May 22, 2023) ("*Stitch Fix*") ("The

large disparity alleged in the price effect of the two disclosures suggests that there likely was not

a constant fraud premium, such that a retained shares approach would not result in the most

accurate loss calculation in this case." (citation, brackets, and internal quotation marks omitted)).

Dr. Li primarily relies on two Northern District of California cases in support of a net

shares purchased approach, *see* Li Resp., ECF 28 at 4, but in fact, they undermine Dr. Li's

position. Dr. Li's first case, *In re Network Associates, Inc., Securities Litigation*, 76 F. Supp. 2d

1017 (N.D. Cal. 1999), acknowledges that the most net shares purchased approach "gets into

trouble . . . if the amount of the 'fraud premium' varied over the course of the class period." *Id.*

at 1027; *see id.* (explaining that "the problem would be that some transactions resulted in greater

losses than others and thus not all transactions were equal"). Dr. Li's second case says much the

same: the net shares purchased "approach assumes that the 'fraud premium,' which is the amount

by which the stock is inflated because of the alleged misrepresentations, stayed constant

throughout the class period." *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1107–08

(N.D. Cal. 2001) (citing *Network Assocs.*, 76 F. Supp. 2d at 1027). Again, because this case

---

[2] A "fraud premium" is "the amount by which the stock was inflated because of the alleged misrepresentations." *Ruland v. InfoSonics Corp.*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at *5 (S.D. Cal. Oct. 23, 2006).

involves two separate disclosures, this Court cannot presume that there was a consistent, single fraud premium during the class period. The net shares purchased approach is thus inapplicable here; the focus here must be on the movants' approximate losses.

Because Mr. Lo indisputably incurred the largest approximate monetary losses at $68,250, he has the largest financial stake in this matter. Therefore, this Court must proceed to evaluate whether Mr. Lo has made a prima facie case satisfying Rule 23.

### b.   Mr. Lo Has Made a Sufficient Prima Facie Showing Under Rule 23

To evaluate Mr. Lo's prima facie case, this Court "must rely on the presumptive lead plaintiff's complaint and sworn certification"—"there is no adversary process to test the substance of [the presumptive lead plaintiff's] claims." *See Cavanaugh*, 306 F.3d at 730. Under that standard, Mr. Lo satisfies the typicality requirement: Like the rest of the class members, Mr. Lo alleges that he suffered monetary losses due to Defendants' false and misleading statements concerning NuScale's two contracts. *See* Lo Mot., ECF 12 at 9; Lo's Certification, ECF 12-2. Mr. Lo also satisfies the adequacy requirement: Mr. Lo has certified that he does not have any conflicts of interest, and he has timely moved for appointment as lead plaintiff, timely filed the requisite certifications, and selected qualified proposed lead and liaison counsel. *See Cannataro*, 2020 WL 12800744, at *5; *infra* at 13. Accordingly, for the purposes of being appointed lead plaintiff, Mr. Lo meets the requirements of Rule 23.

### 3.   Step Three: Dr. Li's Challenges to Mr. Lo's Status as Lead Plaintiff Are Unavailing

At step three, this Court now must consider Dr. Li's challenges to Mr. Lo's ability to fulfill Rule 23's requirements. *See Cavanaugh*, 306 F.3d at 730 (explaining that at step three, "the process turns adversarial"). Dr. Li resists Mr. Lo's appointment as lead counsel on two grounds: first, that Mr. Lo might be subject to travel restrictions as a resident of Hong Kong, and

second, that Mr. Lo is subject to a unique defense because he did not retain any NuScale shares by the time of the second corrective disclosure and therefore did not suffer any losses related to the second corrective disclosure. Dr. Li Mot., ECF 16 at 7–8.

Dr. Li's first contention is meritless. Courts often appoint foreign lead plaintiffs, and Dr. Li has supplied no evidence that Hong Kong residents currently do, or will, encounter travel restrictions to the United States. *See Marquez v. Bright Health Grp., Inc.*, 22-CV-101 (AMD) (RLM), 2022 WL 1314812, at *9 (E.D.N.Y. Apr. 26, 2022) (rejecting a similar argument).

Dr. Li's second contention is unpersuasive as well. In Dr. Li's telling, Mr. Lo is subject to the unique defense that he cannot prove loss causation because he sold all 50,000 of his NuScale shares on October 20, 2023, the day after the first corrective disclosure but weeks before the second corrective disclosure. *See* Li Reply, ECF 32 at 4 (citing cases).

In this Court's view, however, this circumstance does not present a "unique defense[] that render[s] [Mr. Lo] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). First, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action . . . ." *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013). Rather, "lead plaintiffs need[ ] only to prove that they suffered *a* concrete injury because of defendants' wrongdoing, not *every* injury alleged by the class." *In re Leapfrog Enters., Inc. Sec. Litig.*, No. C-03-05421 RMW, 2005 WL 3801587, at *3 (N.D. Cal. Nov. 23, 2005). As a leading treatise explains,

> Practically, . . . a class member may seek to be a lead plaintiff so long as it has standing to pursue its own claim as part of the class action. Whether that lead plaintiff will have the responsibility of adding additional proposed class representatives at class certification depends upon the relationship between its own holdings and the scope of the class. That is a question that will

PAGE 11 – OPINION AND ORDER APPOINTING CLASS ACTION LEAD PLAINTIFF

arise at the class certification stage but need not impede
appointment of a proposed lead plaintiff that otherwise has
standing to pursue its own claim.

7 William B. Rubenstein, Newberg & Rubenstein on Class Actions § 22:33 (6th ed. Nov. 2023

update). Here, no one disputes that Mr. Lo has made a prima facie showing of harm he suffered

as a result of Defendants' alleged wrongdoing; that is sufficient at this stage of this litigation.

Second, Congress made the "deliberate" "decision to leave the standards of Rule 23

intact," *Cavanaugh*, 306 F.3d at 739, and those standards are not as stringent as Dr. Li contends.

"[U]nder [Rule 23's] permissive standards, representative claims are 'typical' if they are

reasonably co-extensive with those of absent class members; they need not be substantially

identical." *Castillo v. Bank of Am., N.A.*, 980 F.3d 723, 729 (9th Cir. 2020) (citation omitted); *see

also Cannataro*, 2020 WL 12800744, at *5 ("The claims of the lead plaintiff need not be

identical to the claims of the class to satisfy typicality." (citations omitted)). Mr. Lo's claims are

reasonably co-extensive with other class members'—as Mr. Lo puts it, both of the corrective

disclosures here "stem[med] from the same [alleged] fraud." Lo Reply, ECF 31 at 5.

Finally, recent authority within the Ninth Circuit disfavors disqualifying a presumptive

lead plaintiff on the ground that he did not retain shares through every corrective disclosure. *See

Stitch Fix*, 2023 WL 3613313, at *4 (citing cases and concluding that "the Court agrees with

cases holding that plaintiffs who sell their stock at a net loss after the first of multiple disclosures

are not precluded from serving as lead plaintiffs"); *Kusen v. Herbert*, Case No. 23-cv-02940-

AMO, 2023 WL 8171736, at *8 (N.D. Cal. Nov. 24, 2023) (citing cases and "reject[ing] the

argument" that a lead plaintiff candidate is disqualified by virtue of selling shares before a final

disclosure); *Twitchell v. Enovix Corp.*, Case No. 23-cv-00071-SI, 2023 WL 3170044, at *5–6

(N.D. Cal. Apr. 28, 2023) (distinguishing many of the cases Dr. Li cites and "declin[ing] to adopt

a rule that a plaintiff who sells its stock before the final disclosure may never serve as lead plaintiff").

In sum, Dr. Li has not rebutted the presumption that Mr. Lo should be the lead plaintiff in this action. Accordingly, this Court appoints Mr. Lo as lead plaintiff.

## B.  Appointing Lead Counsel

Mr. Lo asks that this Court appoint The Rosen Law Firm, P.A. as lead counsel and Ransom, Gilbertson, Martin & Ratliff, LLP as liaison counsel. This Court has reviewed the qualifications of these law firms and approves Mr. Lo's request. *See Fusion-io, Inc.*, 2014 WL 2604991, at *6 (recognizing the value of local liaison counsel but warning against the "duplication of attorney's services" and unnecessary fees and expenses).

## CONCLUSION

For the reasons above, this Court DENIES Dr. Li's Motion to Appoint Lead Counsel, ECF 16, and GRANTS Mr. Lo's Motion to Appoint Lead Counsel, ECF 12. Mr. Lawrence Lo is appointed as lead plaintiff in the above-captioned consolidated actions. Mr. Lo's choice of counsel is approved and, accordingly, The Rosen Law Firm, P.A. is appointed as lead counsel and Ransom, Gilbertson, Martin & Ratliff, LLP is appointed as liaison counsel.

Lead counsel and liaison counsel, after being appointed by the Court, shall manage the prosecution of this litigation. Lead counsel and liaison counsel are to avoid duplicative or unproductive activities and are hereby vested by the Court with the responsibilities that include, without limitation, the following: (1) to prepare all pleadings; (2) to direct and coordinate the briefing and arguing of motions in accordance with the schedules set by the orders and rules of this Court; (3) to coordinate the selection of counsel to act as a spokesperson at pretrial conferences; (4) to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time; (5) to initiate and direct discovery; (6) prepare the case for trial;

PAGE 13 – OPINION AND ORDER APPOINTING CLASS ACTION LEAD PLAINTIFF

(7) to engage in settlement negotiations on behalf of lead plaintiff and the class; and (8) to supervise any other matters concerning the prosecution, resolution or settlement of the above-captioned securities class action.

Within 28 days of entry of this Opinion and Order, Mr. Lo shall file an amended consolidated complaint solely in the leading case. Defendants shall respond to the consolidated complaint within 28 days of its filing.

**IT IS SO ORDERED.**

DATED this 22nd day of February, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge